UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jean H. Smith, ) | |
| ) | Civil Action No. 4:14-cv-04140-RBH-KDW |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| South Carolina Department of Corrections, ) | |
| Director Bryan P. Stirling, and Investigator ) | |
| Robert Stuckey, in his individual capacity, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff filed this 42 U.S.C. § 1983 action alleging that Defendants violated her Fourth, Fifth, and Sixth Amendment rights during the course of her arrest and subsequent imprisonment. Plaintiff also brings South Carolina state law claims against Defendants. This matter is before the court on Defendants' Motion for Summary Judgment, ECF No. 23, filed on October 6, 2015. On October 23, 2015, Plaintiff filed a Response in Opposition to Defendants' Motion, ECF No. 26, and Defendants filed a Reply on November, 2, 2015, ECF No. 28. Therefore, this matter is now ripe for review. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(f), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

I.     Background

Jean H. Smith ("Plaintiff"), a former South Carolina Department of Corrections ("SCDC") Correctional Officer, brought this lawsuit after she was arrested for a South Carolina ethics law violation on July 26, 2011. Compl. ¶¶ 12-15, ECF No. 1. Defendant Stuckey investigated Plaintiff for allegedly bringing an inmate cigarettes and marijuana, which is

considered contraband. *See* ECF Nos. 23-5, 23-7. During his investigation, Defendant Stuckey received statements from Inmate Antonio Watkins and his girlfriend, Sylvia Wilburn, indicating that Plaintiff would receive payments from Ms. Wilburn for bringing the illegal contraband into SCDC for Inmate Watkins. *See id.* "Plaintiff maintains that she did not receive any funds from an inmate, and that a money order was placed on her windshield which was the only time she cashed anything." ECF No. 26 at 3. Plaintiff was arrested after Defendant Stuckey procured a warrant for her arrest. *See id.* Plaintiff alleges that Defendant Stuckey was aware that Plaintiff, during the course of her employment as an officer with SCDC, did not receive payment to perform any acts and made "defamatory, grossly negligent allegations on Plaintiff's arrest warrant." ECF No. 1 at ¶¶ 10, 18. After she was arrested, the charges against Plaintiff were nol prossed on October 25, 2012, and the record expunged. ECF No. 23-15.

Plaintiff brings suit under South Carolina common law for false arrest, malicious prosecution, and abuse of process under the South Carolina Tort Claims Act ("SCTCA"). ECF No. 1 ¶¶ 25-39. Additionally, Plaintiff brings state law causes of action for "outrage-intentional infliction of emotional distress," "slander/defamation/defamation per se," and "negligence/gross negligence." *Id.* at ¶¶ 40-58. In a separate cause of action, Plaintiff alleges Fourth, Fifth, and Sixth Amendment violations under § 1983. *Id.* at ¶¶ 59-62. Plaintiff seeks actual, consequential, and punitive damages pursuant to the SCTCA and § 1983, along with attorneys' fees, costs, and other relief that the court deems just and proper. *Id.* at ¶¶ 63-66.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

III.     Analysis

Defendants assert several arguments in support of their Motion for Summary Judgment. ECF No. 23-1. In their first argument, Defendants assert that "Plaintiff's explanation of her conduct is utterly baseless." *Id.* at 7-9. Defendants argue that to successfully oppose a Motion for Summary Judgment, "Plaintiff must do more than offer the flimsiest of stories to explain damning evidence." *Id.* at 7. Furthermore, Defendants describe Plaintiff's opposition as "baseless conjecture." *Id.* at 8. The undersigned will consider all the evidence when addressing each of Defendants' arguments that concern specific causes of action rather than first addressing this broad argument.

A.    Probable Cause for Plaintiff's Arrest

Defendants assert that probable cause existed for Plaintiff's arrest, and the existence of probable cause is dispositive of Plaintiff's claims for false imprisonment, malicious prosecution, negligence/gross negligence, defamation, and claims under § 1983. ECF No. 23-1 at 9. In this instance, Defendants argue that probable cause can be decided as a matter of law because the evidence yields but one conclusion. *Id.* In response, Plaintiff argues that probable cause did not exist for her arrest because Defendant Stuckey had no proof that Plaintiff received funds as a result of any transaction. ECF No. 26 at 8-9. Specifically, Plaintiff asserts:

> In this case, [Defendant] Stuckey obtained an arrest warrant before he had received any response to his subpoena, based on a tip from an inmate who came to him looking for a deal, and based on an illegally obtained photograph (based on his friend's information that should not have been disclosed without a subpoena).

*Id.* at 9. Further Plaintiff maintains that the affidavit attached to the arrest warrant does not state the facts upon which probable cause was based. *Id.* at 10. In Reply, Defendants argue that the evidence needed to procure an arrest warrant and the evidence needed to obtain a conviction are different and here, Defendant Stuckey had sufficient evidence to establish probable cause for Plaintiff's arrest and to procure the arrest warrant. ECF No. 28 at 1-3.

Probable cause exists if the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters,* 81 F.3d 429, 434 (4th Cir. 1996). "Probable

4

cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." *Porterfield v. Lott,* 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky,* 942 F.2d 257, 264 (4th Cir. 1991). Probable cause will be found when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton,* 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992)). "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* A court's inquiry should be made based on the information possessed by the officer at the time of the arrest that was then reasonably available to him at the time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett,* 973 F.2d at 312. When a plaintiff alleges a lack of probable cause for an arrest, he "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was involved in the charged offense. *Brown v. Gilmore,* 278 F.3d 362, 368 (4th Cir. 2002).

A facially valid arrest warrant provides the arresting officer with sufficient probable cause to arrest the individual identified in the warrant. *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979). Therefore, "[a] public official cannot be charged with false arrest when he arrests a

defendant pursuant to a facially valid warrant. . . . Thus, we recognize implicitly that a claim for false arrest may be considered only when no arrest warrant has been obtained." *Porterfield*, 156 F.3d at 568 (citing *Brooks v. City of Winston–Salem*, 85 F.3d 178 (4th Cir. 1996)).

In this case, Plaintiff was arrested pursuant to a facially valid arrest warrant as signed by Municipal Court Judge Robert Stanton. ECF No. 23-3. The warrant indicates it is based on the following facts: "On June 07, 2011, in the State of S.C., in Marlboro County, Correctional Officer Jean Smith received payment to perform an act in violation of her official responsibilities. Probable cause: sender and receiver receipts, statements, and investigation by the affiant." *Id.* In her Response to the Motion for Summary Judgment, Plaintiff appears to argue that the arrest warrant was not facially valid because Defendant Stuckey did not have the evidence he claimed to have attested to in the warrant—such as sender and receiver receipts, statements, and investigation by the affiant. ECF No. 26 at 9. In other words, Plaintiff appears to argue that Defendant Stuckey acted improperly in procuring the arrest warrant because he had not "received any response to his subpoena [before obtaining the warrant]," had received only a "tip from an inmate who came looking for a deal," and "an illegally obtained photograph (based on friend's information that should not have been disclosed without a subpoena)." *Id.* In essence she seems to argue that the arrest warrant was not *factually* valid on its face.

Here, Plaintiff was arrested based on an alleged South Carolina ethics violation pursuant to section 8-13-705 of the South Carolina Code. *See* ECF No. 23-3 at 2. Section 8-13-705 (B) provides:

> A public official, public member, or public employee may not, directly or indirectly, knowingly ask, demand, exact, solicit, seek, accept, assign, receive, or agree to receive anything of value for himself or for another person in return for being:
> (1) influenced in the discharge of his official responsibilities;

6

> (2) influenced to commit, aid in committing, collude in, allow fraud, or make an opportunity for the commission of fraud on a governmental entity; or
> (3) induced to perform or fail to perform an act in violation of his official responsibilities.

Aside from whether the warrant was facially valid, the threshold question is whether there was probable cause to arrest Plaintiff for a violation of section 8-13-705(B). The undersigned must examine the evidence presented to make the probable cause determination. Since filing this action the parties have engaged in discovery, and Defendants attached several key pieces of discovery to their Motion for Summary Judgment.

In Defendant Stuckey's deposition, he testified that at the time Plaintiff was arrested he was working as an investigator at Evans Correctional Institution for the Division of Investigation for SCDC. ECF No. 23-5 at 4-5. As an investigator, Defendant Stuckey's "primary focus was any criminal activity concerning the inmate population or officers." *Id.* Defendant Stuckey testified that he secured the warrant for Plaintiff's arrest. *Id.* at 7. Prior to securing the arrest warrant, Defendant Stuckey testified that he received a note from Inmate Antonio Watkins concerning his "dealings" with Plaintiff. *Id.* at 10. Later, Inmate Watkins told Defendant Stuckey that he and Plaintiff "would decide what [Plaintiff] was to bring in and how much she was to pay, and he would get Ms. Wilburn [his girlfriend] to send whatever the amount of money through Western Union to [Plaintiff]." *Id.* Defendant Stuckey then had Inmate Watkins call Ms. Wilburn who confirmed Inmate Watkins' story and "she said that she had all the receipts [and] [s]he kept the receipts from Western Union where she'd sent [Plaintiff] money, and she would be willing to mail me those, which she did, and through a subpoena using the numbers on those receipts from her, I was able to get the actual copy of the Western Union request to send money from Western Union." *Id.*

7

When Defendant Stuckey was questioned about evidence he had that "show[ed] [Plaintiff] picked up the money, actually claimed it so to speak," he responded that in addition to the receipts he was able to find out Plaintiff cashed the money orders at a bank inside the Wal-Mart in the Marion/Mullins area. *Id.* Further, he testified:

> I rode up to that Wal-Mart and I talked to a manager, and I showed her the receipt that had been cashed at that Wal-Mart and asked her did she have any way to verify it and she pulled up her records and saw that, that it was done there and she also told me that every transaction there's a recording on camera. There's a camera right over, right over the counter where an individual does their business. And I said would you be able to pull up that image. I had no subpoena. It was not something she had to do at time, but she said I may be able to if you'll give me a minute and let me call. So she called her supervisor and explained to her and finally put me on the phone and I told him what I was doing. And I said is there any way before I go to the trouble to put in for a subpoena to get a usable in-court photo to, to, to keep from barking up the wrong tree, waste their time, waste my time? And he said, yes, tell her to go ahead and do that, and he put her back on the phone and gave her permission to yes, bring up that photo and that date. So she did. And the photo is, is the date and time. The time is also noted on, on, on the receipt and there's [Plaintiff].

*Id.* at 11.

On cross-examination, Defendant Stuckey testified that Ms. Wilburn volunteered to provide him with Western Union receipts as evidence. *Id.* at 20. Further, Defendant Stuckey testified that once he obtained the receipts, he contacted Western Union to find out where the receipts had been cashed. *Id.* Thereafter, Defendant Stuckey went to one of the locations and obtained a photograph that coincided with one of the transactions. *Id.* Defendant Stuckey testified that he swore out an arrest warrant after he obtained the following pieces of evidence: a statement from Inmate Watkins, a statement from Ms. Wilburn, Western Union receipts from Ms. Wilburn showing she sent transactions through Western Union to Jean Smith, and verification from a banking institution where he saw a picture of Plaintiff cashing the check at

the same time as one of the Western Union transactions. *Id.* Defendant Stuckey testified that with this information he had "enough probable cause to draw a warrant." *Id.*

The remainder of the evidence Defendants present confirms Defendant Stuckey's deposition testimony. Specifically, an investigative report synopsis details a timeline of Defendant Stuckey's investigation and indicates that on July 18, 2011, Defendant Stuckey received receipts from Ms. Wilburn showing "eight transactions totaling $1650.00, during which [Plaintiff] was sent money." ECF No. 23-7 at 2. Other pieces of evidence include a July 25, 2011 interview with Inmate Watkins, ECF No. 23-8; Western Union transactions and receipts with "Jean Smith" listed as the "Receiver," ECF No. 23-9; a Western Union subpoena record, ECF No. 23-10; and other investigative materials.

Based on the materials he gathered during the course of his investigation, Defendant Stuckey believed Plaintiff violated section 8-13-705(B) of the South Carolina Code. Importantly, the undersigned notes that under section 8-13-705(B), it is a statutory violation for a public official to "ask, demand, exact, solicit, seek, accept, assign, receive, *or* agree to receive anything of value." Though Plaintiff emphatically argues that there is no evidence indicating she *received* money, Plaintiff may violate the section at issue based in many ways, including a solicitation, a demand, or an agreement. Here, the undersigned finds that with the investigation materials, Defendant Stuckey had probable cause to procure (and in fact procured) an arrest warrant. The investigative materials and the warrant provided Defendant Stuckey with sufficient probable cause to arrest the individual identified in the warrant. *See Baker v. McCollan*, 443 U.S. 137, 143–44 (1979).

To show a lack of probable cause, Plaintiff must prove that Defendant Stuckey "deliberately or with a reckless disregard for the truth made material false statements in his

9

affidavit, or omitted from the affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's County Md.,* 475 F.3d 621, 627 (4th Cir. 2007) (internal quotations and citations omitted). "Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," [meaning], "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo,* 212 F.3d 781, 788 (3d Cir. 2000) (internal quotation marks omitted). Here, Plaintiff simply fails to provide any evidence that Defendant Stuckey either deliberately, or with reckless disregard for the truth, acted with any high degree of awareness of any statement's probable falsity, or made materially false statements in applying for the warrant. *See Lancaster v. Williams*, No. 3:09-1989-CMC, 2010 WL 2571873, at *4 (D.S.C. June 21, 2010).

Moreover, as Plaintiff admits in her Complaint, on August 16, 2011, she was indicted for bribery by a Marlboro County Grand Jury. ECF No. 1 ¶ 13. The return of an indictment by the grand jury "infers prima facie probable cause for the prosecution, . . . which, of course, may be rebutted by proof of false or fraudulent testimony before the grand jury.'" *White v. Coleman,* 277 F.Supp. 292, 297 (D.S.C. 1967) (quotations and citations omitted). Conversely, the decision by the solicitor to nolle prosse the indictment "constitute(s) no evidence of want of probable cause, raise(s) no presumption thereof, and establish(es) no prima facie case of want of probable cause." *Id.* at 299 (quotation and citation omitted).

The cognizable federal claims in Plaintiff's Complaint under § 1983 include causes of action for false arrest and malicious prosecution. Based on the valid arrest warrant, the grand jury's indictment, and the undersigned's finding that probable cause existed, Plaintiff's causes of

10

action for false arrest and malicious prosecution as Fourth Amendment violations under § 1983 fail as a matter of law. *See Porterfield*, 156 F.3d at 568; *Snider v. Seung Lee*, 584 F.3d 193, 202 (4th Cir. 2009) ("To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendant initiated or maintained a criminal proceeding; (2) the criminal proceeding terminated in the plaintiff's favor; (3) *the proceeding was not supported by probable cause*; and (4) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.") (emphasis added). Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment and dismissing Plaintiffs' cause of action for a Fourth Amendment violation based on Defendant Stuckey's probable cause for the arrest of Plaintiff.

      B.      Fifth and Fourteenth Amendment Claims

Defendants maintain that to the extent Plaintiff challenges the sufficiency of the "due process" she was afforded, her Fifth and Fourteenth Amendment claims are baseless and must be dismissed. ECF No. 23-1 at 26. In her Response to Defendants' Motion for Summary Judgment, Plaintiff argues: "[w]ith regard to the lack of due process, there is no question that [Defendant] Stuckey proceeded with the securing of an arrest warrant despite presenting [P]laintiff with the evidence or giving her the opportunity to be heard." ECF No. 26 at 18.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The Supreme Court has held: "Since an adversary hearing is not required, and since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Baker v. McCollan*, 443

11

U.S. 137, 143 (1979). Further, the *Baker* Court held that a claim of innocence to a charge contained in an arrest warrant "is largely irrelevant to his claim of deprivation of liberty without due process of law." *Id.* at 145. Additionally, the Court found that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Id.*

Plaintiff fails to cite to any law, and the undersigned has found no law supporting a cause of action for a due process violation pursuant to § 1983 in the pre-arrest context. Moreover, "any deprivation of liberty or property which the [P]laintiff may allege occurred only as a result of or attendant to constitutionally legitimate proceedings." *Cramer v. Crutchfield*, 496 F. Supp. 949, 952 (E.D. Va. 1980) *aff'd*, 648 F.2d 943 (4th Cir. 1981). Therefore, the court's finding of constitutional proceedings "ends the [c]ourt's inquiry into the malicious prosecution and abuse of process claims under Section 1983." *See id.* Therefore, the undersigned must conclude that Plaintiff's purported due process cause of action must fail as a matter of law. Accordingly, the undersigned recommends that Defendants be granted summary judgment on this claim.

C.   Sixth Amendment Claim

Defendants maintain that to the extent Plaintiff raises a cause of action for a Sixth Amendment claim it fails as a matter of law. ECF No. 23-1 at 28. In her Response to Defendants' Motion for Summary Judgment, Plaintiff does not address this argument. ECF No. 26 at 18. The undersigned finds that Plaintiff has failed to articulate facts in her Complaint that would support a cause of action for a Sixth Amendment violation. Moreover, the undersigned finds that she effectively waived any purported Sixth Amendment claim by abandoning it in her Response to Defendants' Motion for Summary Judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256 (holding that a "plaintiff must present affirmative evidence in order to defeat a

properly supported motion for summary judgment"); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *see e.g.*, *Nat'l Home Ins. Co. v. Bridges*, No. 6:15-00112-MGL, 2015 WL 6688117, at *4 (D.S.C. Oct. 30, 2015) ("Respondents failed to object to Petitioner's argument that the amount in controversy is met in this action, thus waiving any argument to the contrary."). The undersigned concludes that Plaintiff's purported § 1983 cause of action for a Sixth Amendment violation must fail as a matter of law. Therefore, the undersigned recommends that Defendants be granted summary judgment on this claim.

  D. Qualified Immunity

Defendants maintain that Defendants Stirling and Stuckey are entitled to qualified immunity on Plaintiff's § 1983 causes of action. ECF No. 23-1 at 29-30. The undersigned agrees.

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific

13

context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

E.  State Law Claims

In addition to her § 1983 claims, Plaintiff brings separate state-law claims for false arrest, malicious prosecution, abuse of process, "outrage-intentional infliction of emotional distress," "slander/defamation/defamation per se," and "negligence/gross negligence." ECF No. 1. If the court accepts this Report and Recommendation, the only claims within the court's original jurisdiction will be dismissed. Without Plaintiff's § 1983 claims, Plaintiff's sole remaining causes of action are based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v.*

*Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims); *See also, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Addison v. Chesterfield Cty. Sheriff Dep't*, No. 4:12-CV-02543-RBH, 2013 WL 6799223, at *3 (D.S.C. Dec. 20, 2013) (declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to § 1983 claim); *Wauben v. Protega (USA), Inc.*, No. 2:05–2780–PMD–RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (same in Title VII matter).

Here, the undersigned recommends the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice to them being filed in state court, thus ending this action.[1]

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 23, be **granted and this case be dismissed**.

IT IS SO RECOMMENDED.

*Kaymani D. West*

February 29, 2016                                              Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[1] Nevertheless, the undersigned notes that in the case of *Lancaster v. Williams*, No. 3:09-1989-CMC, 2010 WL 2571873, at *4 (D.S.C. June 21, 2010), the district court dismissed plaintiff's state law claims for false arrest and malicious prosecution based on a facially valid arrest warrant and the court's finding that plaintiff failed to show that the proceedings were terminated in his favor when charges were nol prossed.

15